441.     This is a *qui tam* action brought by Relator on behalf of the Commonwealth of

Virginia for treble damages and penalties under the Virginia Fraud Against TaxPayers Act, Va.

Code Ann. §8.01-216.1 *et seq*.  Section 8.01-216.3 provides liability for any person who:

> 1. Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> 2. Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
>
> 3. Conspires to commit a violation of subdivision 1, 2, 4, 5, 6, or 7;
> ...
> 7. Knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Commonwealth or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Commonwealth;

442.     In addition, Va. Code Ann. § 32.1-315 prohibits the solicitation, receipt or

offering of any remuneration, including any bribe or rebate, directly or indirectly, overtly or

covertly, in cash or in kind, in return for furnishing any good, service or item for which

payment may be made in whole or in part under the Virginia Medicaid Program.

443.     The off-label marketing and promotion, misbranding and the kickback schemes

detailed in this Complaint occur nationwide. This conduct and these practices occur in every

state in the country by Merit employees and agents, including in Virginia. Defendant violated

Va. Code Ann. § 32.1-315 by engaging in the illegal conduct, kickback scheme and other

related conduct described in this Complaint.

444.     Defendant furthermore violated Virginia Fraud Against TaxPayers Act §8.01-

216.1 *et seq*. by: (1) knowingly causing hundreds of thousands of false claims to be made, used

and presented to the State; (2) causing false records or statements to get a false or fraudulent

claim paid or approved by the State; and (3) conspiring to defraud the State by getting a false

or fraudulent claim allowed or paid. It is also liable by virtue of its systematic violation of
Federal and state laws, including the FDCA, FCPA, Federal Anti-Kickback Act, and VA Code
Ann. § 32.1-315, and by virtue of the fact that none of the claims submitted in connection with
its conduct were even eligible for reimbursement by the government-funded healthcare
programs.

445.    The Commonwealth of Virginia, by and through the Virginia Medicaid Program
and other State healthcare programs, paid the claims submitted by healthcare providers and
third party payers in connection therewith – payment which was intended by the Defendant.

446.    The State was unaware of this fraud, and could not have uncovered the
Defendant's scheme absent this disclosure by the Relator.

447.    Compliance with applicable Medicare, Medicaid and the various other federal
and state laws cited herein was an implied, and upon information and belief, also an express
condition of payment of claims submitted to the Commonwealth of Virginia in connection with
Defendant's conduct. In order to be eligible to participate in and receive reimbursement as a
provider, compliance with applicable Virginia statutes, regulations and pharmacy manuals was
mandatory. The claims submitted by Virginia providers in connection with Defendant's
equipment, devices and products violated federal and state laws as well as the Virginia
provider agreements and should not have been paid.

448.    Had the Commonwealth of Virginia known that Defendant was violating the
Federal and state laws cited herein and/or that the claims submitted in connection with
Defendant's conduct failed to meet the reimbursement criteria of the government-funded
healthcare programs or were premised on false and/or misleading information, it would not

have paid the claims caused to be submitted by Defendant through healthcare providers and third party payer in connection with that conduct.

449. As a result of Defendant's violations of the Virginia Fraud Against Tax Payers Act, the Commonwealth of Virginia has been damaged in an amount far in excess of millions of dollars, exclusive of interest.

450. Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Virginia Fraud Against TaxPayers Act on behalf of himself and the Commonwealth of Virginia.

451. This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the Federal claims and merely asserts separate damage to the Commonwealth of Virginia in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

**To the Commonwealth of Virginia**:

(1) Three times the amount of actual damages which the Commonwealth of Virginia has sustained as a result of Defendant's conduct;

(2) A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendant caused to be presented to the Commonwealth of Virginia;

(3) Prejudgment interest; and

(4) All costs incurred in bringing this action.

**To Relator:**

(1) The maximum amount allowed pursuant to Va. Code Ann. § 32.1-315, §8.01-216.1 *et seq.*, and/or any other applicable provision of law;

(2) Reimbursement for reasonable expenses which Relator incurred in connection with this action;

(3) That Relator be awarded the maximum amount allowed as a Relator's Share under State law;

(4) An award of reasonable attorneys' fees and costs; and

(5) Such further relief as this Court deems equitable and just.

## COUNT 17
## NEW YORK FALSE CLAIMS ACT

452.     All paragraphs of this Complaint are realleged and expressly adopted and

incorporated as if fully set forth herein again.

453.     This is a *qui tam* action brought by Relator on behalf of the State of New

York to recover treble damages and civil penalties under the New York False Claims Act,

NY CLS St Fin § 187 *et seq.* Section 189 provides, in part, liability for any person who:

(a) knowingly presents, or causes to be presented a false or fraudulent claim for payment or approval;

(b) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(c) conspires to commit a violation of paragraph (a), (b), (d), (e), (f) or (g) of this subdivision;

454.     In addition, New York State law deems it unlawful to, "directly or indirectly

offering, giving, soliciting, or receiving or agreeing to receive, any fee or other consideration to

or from a third party for the referral of a patient or in connection with the performance of

professional services." NY CLS Educ. § 6530. Defendant violated the New York State law by

engaging in the illegal conduct, kickback scheme and other related conduct described in this

Complaint.

127

455.    The false and misleading off-label marketing and promotion, misbranding and the kickback schemes detailed in this Complaint occur nationwide. This conduct and these practices occur in every state in the country by Merit personnel, including in New York.

456.    Defendant furthermore violated NY CLS St Fin § 187 *et seq.* by: (1) knowingly causing hundreds of thousands of false claims to be made, used and presented to the State; (2) causing false records or statements to get a false or fraudulent claim paid or approved by the State; and (3) conspiring to defraud the State by getting a false or fraudulent claim allowed or paid. It is also liable by virtue of its systematic violation of Federal and state laws, including the FDCA, FCPA, Federal Anti-Kickback Act, and the New York Vendor Fraud and Kickback statute, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

457.    The State of New York, by and through the New York Medicaid program and other state healthcare programs, paid the claims submitted by healthcare providers and third party payers in connection therewith – a result which was intended by Defendant.

458.    The State was unaware of this fraud, and could not have uncovered the Defendant's scheme absent this disclosure by the Relator.

459.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of New York in connection with Defendant's conduct. In order to be eligible to participate in and receive reimbursement as a provider, compliance with applicable New York statutes, regulations and pharmacy manuals was mandatory. The claims submitted by New York providers in connection with Defendant's

Equipment, devices and products violated federal and state laws as well as the New York provider agreements and should not have been paid.

460.    Had the State of New York known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims caused to be submitted by Defendant through healthcare provider and third party payers in connection with that conduct.

461.    As a result of Defendant's violations of NY CLS St Fin § 187 *et seq.*, the State of New York has been damaged in an amount far in excess of millions of dollars, exclusive of interest.

462.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to NY CLS St Fin § 187 *et seq.* on behalf of himself and the State of New York.

463.    This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claims and merely asserts separate damage to the State of New York in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

## To The STATE of NEW YORK:

(1) Three times the amount of actual damages which the State of New York has sustained as a result of Defendant's conduct;

(2) A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendant caused to be presented to the State of New York;

(3) Prejudgment interest; and

(4) All costs incurred in bringing this action.

**To Relator:**

(1 ) The maximum amount allowed pursuant to NY CLS St Fin § 187 *et seq.* and/or any other applicable provision of law;

(2) Reimbursement for reasonable expenses which Relator incurred in connection with this action;

(3) That Relator be awarded the maximum amount allowed as a Relator's Share under State law;

(4) An award of reasonable attorneys' fees and costs; and

(5) Such further relief as this Court deems equitable and just.

## COUNT 18
### MICHIGAN MEDICAID FALSE CLAIMS ACT

464.    All paragraphs of this Complaint are realleged and expressly adopted and

incorporated as if fully set forth herein again.

465.    This is a *qui tam* action brought by Relator on behalf of the State of Michigan to

recover treble damages and civil penalties under the Michigan Medicaid False Claims Act.

MCLS § 400.601 *et seq.* Section 400.607 provides liability in pertinent part as follows:

Sec. 7. (1) A person shall not make or present or cause to be made or presented to an employee or officer of this state a claim under the social welfare act, 1939 PA 280, MCL 400.1 to 400.119b, upon or against the state, knowing the claim to be false.

(2) A person shall not make or present or cause to be made or presented a claim under the social welfare act, 1939 PA 280, MCL 400.1 to 400.119b, that he or she knows falsely represents that the goods or services for which the claim is made were medically necessary in accordance with professionally accepted standards. Each claim violating this subsection is a separate offense. A health facility or agency is not liable under this subsection unless the health facility or agency, pursuant to a conspiracy, combination, or collusion with a physician or

other provider, falsely represents the medical necessity of the particular goods or services for which the claim was made.

(3) A person shall not knowingly make, use, or cause to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the state pertaining to a claim presented under the social welfare act.

MCLS § 400.607.

466.     Furthermore, § 400.603 provides, in part, for liability as follows:

Sec. 3. (1) A person shall not knowingly make or cause to be made a false statement or false representation of a material fact in an application for Medicaid benefits.
(2) A person shall not knowingly make or cause to be made a false statement or false representation of a material fact for use in determining rights to a Medicaid benefit.
(3) A person, who having knowledge of the occurrence of an event affecting his initial or continued right to receive a Medicaid benefit or the initial or continued right of any other person on whose behalf he has applied for or is receiving a benefit, shall not conceal or fail to disclose that event with intent to obtain a benefit to which the person or any other person is not entitled or in an amount greater than that to which the person or any other person is entitled.

467.     In addition, MCLS § 400.604 prohibits the solicitation or receipt of any

remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or

covertly, in cash or in kind, in return for furnishing any item or service for which payment may

be made in whole or in part under the Michigan Medicaid program. Moreover, MCLS

§400.606 provides that "A person shall not enter into an agreement, combination, or

conspiracy to defraud the state by obtaining or aiding another to obtain the payment or

allowance of a false claim under the social welfare act … sections 400.1 to 400.121 of the

Michigan Compiled Laws." MCLS § 400.606.

468.     Defendant violated MCLS §§ 400.604 and 400.606 by engaging in the illegal

conduct, kickback scheme and other related conduct described in this Complaint. The off-label

131

marketing and promotion, misbranding and the kickback schemes detailed in this Complaint occur nationwide. This conduct and these practices occur in every state in the country by Merit personnel, including in Michigan.

469.     Defendant furthermore violated, MCLS §§ 400.601 *et seq.* by: (1) knowingly causing hundreds of thousands of false claims to be made, used and presented to the State; (2) causing false records or statements to get a false or fraudulent claim paid or approved by the State; and (3) failing to disclose or report the fraud. It is also liable by virtue of its systematic violation of Federal and state laws, including the FDCA, FCPA and the Federal Anti-Kickback Act, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

470.     The State of Michigan, by and through the Michigan Medicaid program and other state healthcare programs, paid the claims submitted by healthcare providers and third party payers in connection therewith – a result which was intended by the Defendant.

471.     The State was unaware of this fraud, and could not have uncovered the Defendant's scheme absent this disclosure by the Relator.

472.     Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Michigan in connection with Defendant's conduct. In order to be eligible to participate in and receive reimbursement as a provider, compliance with applicable Michigan statutes, regulations and pharmacy manuals was mandatory. The claims submitted by Michigan providers in connection with Defendant's

132

equipment, devices and products violated federal and state laws as well as the Michigan provider agreements and should not have been paid.

473.    Had the State of Michigan known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims caused to be submitted by Defendant through healthcare providers and third party payers in connection with that conduct.

474.    As a result of Defendant's violations of MCLS § 400.601 *et seq.*, the State of Michigan has been damaged in an amount far in excess of millions of dollars, exclusive of interest.

475.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to MCLS § 400.601 *et seq.* on behalf of himself and the State of Michigan.

476.    This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claims and merely asserts separate damage to the State of Michigan in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

**To the State of Michigan**:

(1) Three times the amount of actual damages which the State of Michigan has sustained as a result of Defendant's conduct;

(2) A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendant caused to be presented to the State of Michigan;

(3) Prejudgment interest; and

(4) All costs incurred in bringing this action.

**To Relator:**

(1) The maximum amount allowed pursuant to MCLS § 400.601 *et seq.* and/or any other applicable provision of law;

(2) Reimbursement for reasonable expenses which Relator incurred in connection with this action;

(3) That Relator be awarded the maximum amount allowed as a Relator's Share under State law;

(4) An award of reasonable attorneys' fees and costs; and

(5) Such further relief as this Court deems equitable and just.

## COUNT 19
## NEW MEXICO MEDICAID FALSE CLAIMS ACT

477.    All paragraphs of this Complaint are realleged and expressly adopted and

incorporated as if fully set forth herein again.

478.    This is a *qui tam* action brought by Relator on behalf of the State of New

Mexico to recover treble damages and civil penalties under the New Mexico Fraud Against

Taxpayers Act N.M. Stat. Ann. §§ 27-14-1 *et seq.* Section 27-14-4 provides, in part, liability in

pertinent part as follows:

A. presents, or causes to be presented, to the state a claim for payment under the Medicaid program knowing that such claim is false or fraudulent;

B. presents, or causes to be presented, to the state a claim for payment under the Medicaid program knowing that the person receiving a Medicaid benefit or payment is not authorized or is not eligible for a benefit under the Medicaid program;

C. makes, uses or causes to be made or used a record or statement to obtain a false or fraudulent claim under the Medicaid program paid for or approved by the state knowing such record or statement is false;

D. conspires to defraud the state by getting a claim allowed or paid under the Medicaid program knowing that such claim is false or fraudulent;

479.     In addition, N.M. Stat. Ann. §§ 30-41-1 and 30-41-2 prohibit the solicitation or receipt, offer or payment, of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind, in return for furnishing any item or service for which payment may be made in whole or in part under the New Mexico Medicaid program.

480.     Defendant violated N.M. Stat. Ann. §§ 30-41-1 and 30-41-2 by engaging in the illegal conduct, kickback scheme and other related conduct described in this Complaint.

481.     The off-label marketing and promotion, misbranding and the kickback schemes detailed in this Complaint occur nationwide. This conduct and these practices occur in every state in the country by Merit personnel, including in New Mexico.

482.     Defendant furthermore violated N.M. Stat. Ann. §§ 27-14-1 *et seq.* by (1) knowingly causing hundreds of thousands of false claims to be made, used and presented to the State; (2) causing false records or statements to get a false or fraudulent claim paid or approved by the State; and (3) conspiring to defraud the State by getting a false or fraudulent claim allowed or paid. It is also liable by virtue of its systematic violation of Federal and state laws, including the FDCA, FCPA, Federal Anti-Kickback Act, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

483.     The State of New Mexico, by and through the New Mexico Medicaid program and other state healthcare programs, paid the claims submitted by healthcare providers and third party payers in connection therewith – a result which was intended by the Defendant.

135

484. The State was unaware of this fraud, and could not have uncovered the Defendant's scheme absent this disclosure by the Relator.

485. Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of New Mexico in connection with Defendant" conduct. In order to be eligible to participate in and receive reimbursement as a provider, compliance with applicable New Mexico statutes, regulations and pharmacy manuals was mandatory. Additionally, New Mexico requires all Medicaid Providers to agree to the following among other items:

- Abide by all federal, state, and local laws, rules, and regulations, including but not limited to, those laws, regulations, and policies applicable to providers of medical services under Title XIX (Medicaid) and Title XXI (SCHIP) of the Social Security Act and other health care programs administered by HSD.

- Assume responsibility for any and all claims submitted on behalf of the provider and under the provider's number. Submission of false claims or fraudulent representation may subject the provider to termination, criminal investigations and charges, and other sanctions specified in the MAD Provider Program Manual.

- If the provider obtains an excess payment or benefit willfully, by means of false statement, representation, concealment of any material fact, or other fraudulent scheme or devise with intent to defraud, criminal sentences and fines and/ or civil monetary penalties shall be imposed pursuant to, but not limited to, the Medicaid Fraud Act, NMSA 1978, §§ 3044-1 et seq., 42 U.S.C. § 1320a-7b, and 42 C.F.R. § 455.23.

- In addition to the above criminal civil penalties, HSD may impose monetary or non-monetary sanctions, including civil monetary penalties for provider misconduct or breach of any of the terms of this Agreement.

(New Mexico Medical Assistance Division Provider Participation Agreement, Form MAD 335).

486. These requirements are more than just conditions of participation, they are conditions of payment. The claims submitted by New Mexico providers in connection with

Defendant's equipment, devices and products violated federal and state laws as well as the New Mexico provider agreements and should not have been paid.

487. Had the State of New Mexico known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims caused to be submitted by Defendant through healthcare providers and third party payers in connection with that conduct.

488. As a result of Defendant's violations of N.M. Stat. Ann. §§ 27-14-1 *et seq.,* N.M. Stat. Ann. §§ 30-41-1 and 30-41-2, the State of New Mexico has been damaged in an amount far in excess of millions of dollars exclusive of interest.

489. Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to N.M. Stat. Ann. §§ 27-14-1 *et seq.* on behalf of himself and the State of New Mexico.

490. This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claims and merely asserts separate damage to the State of New Mexico in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

**To the State of New Mexico:**

(1) Three times the amount of actual damages which the State of New Mexico has sustained as a result of Defendant's conduct;

(2) A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendant caused to be presented to the State of New Mexico;

137

(3) Prejudgment interest; and

(4) All costs incurred in bringing this action.

### To Relator:

(1) The maximum amount allowed pursuant to N.M. Stat. Ann. §§27-14-1 *et seq.* and/or any other applicable provision of law;

(2) Reimbursement for reasonable expenses which Relator incurred in connection with this action;

(3) That Relator be awarded the maximum amount allowed as a Relator's Share under State law;

(4) An award of reasonable attorneys' fees and costs; and

(5) Such further relief as this Court deems equitable and just.

## COUNT 20
## INDIANA FALSE CLAIMS AND WHISTLEBLOWER PROTECTION ACT

491. All paragraphs of this Complaint are realleged and expressly adopted and

incorporated as if fully set forth herein again.

492. This is a *qui tam* action brought by Relator on behalf of the State of Indiana to

recover treble damages and civil penalties under the Indiana False Claims and Whistleblower

Protection Act, Ind. Code Ann. § 5-11-5.5-1 *et seq.*

493. Section 5-11-5.5-2 provides, in part, liability for anyone who:

(b) A person who knowingly or intentionally:

(1) presents a false claim to the state for payment or approval;

(2) makes or uses a false record or statement to obtain payment or approval of a false claim from the state;

(3) with intent to defraud the state, delivers less money or property to the state than the amount recorded on the certificate or receipt the person receives from the state;

138

...

(6) makes or uses a false record or statement to avoid an obligation to pay or transmit property to the state;

(7) conspires with another person to perform an act described in subdivisions (1) through (6); or

(8) causes or induces another person to perform an act described in subdivisions (1) through (6);

494.    In addition, Ind. Code Ann. § 12-15-24-2 makes it unlawful for a person who furnishes items or services under the Indiana Medicaid program to solicit, offer or receive a:

(1) Kickback or bribe in connection with the furnishing of the items or services or the making or receipt of the payment; or

(2) Rebate of a fee or charge for referring the individual to another person for the furnishing of items or services.

Moreover, § 12-17.6-6-12 contains the same provision in relation to the Children's Health Insurance Program.

495.    Defendant violated Ind. Code Ann. § 12-15-24-2 by engaging in the illegal conduct, kickback scheme and other related conduct described in this Complaint.

496.    The false and misleading off-label marketing and promotion, misbranding and the kickback schemes detailed in this Complaint occur nationwide. This conduct and these practices occur in every state in the country by Merit personnel, including in Indiana.

497.    Defendant furthermore violated Ind. Code Ann. Ind. Code Ann. § 5-11-5.5-1 *et seq.* by: (1) knowingly causing hundreds of thousands of false claims to be made, used and presented to the State; (2) causing false records or statements to get a false or fraudulent claim paid or approved by the State; and (3) conspiring to defraud the State by getting a false or fraudulent claim allowed or paid. It is also liable by virtue of its systematic violation of Federal and state laws, including the FDCA, FCPA, Federal Anti-Kickback Act, and the Indiana

Vendor Fraud and Kickback statute, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

498. The State of Indiana, by and through the Indiana Medicaid program and other state healthcare programs, paid the claims caused to be submitted by Defendant through healthcare providers and third party payers in connection therewith – a result intended by the Defendant.

499. The State was unaware of this fraud, and could not have uncovered the Defendant's scheme absent this disclosure by the Relator.

500. Compliance with applicable Medicare, Medicaid and various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Indiana in connection with Defendant's conduct. In order to be eligible to participate in and receive reimbursement as a provider, compliance with applicable Indiana statutes, regulations and pharmacy manuals was mandatory, and was agreed to by the providers in the IHCP Provider Agreement. The claims submitted by Indiana providers in connection with Defendant's equipment, devices and products violated federal and state laws as well as the Indiana provider agreements and should not have been paid.

501. Had the State of Indiana known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

502.     As a result of Defendant's violations of Ind. Code Ann. § 5-11-5.5-1 *et seq.*, the

State of Indiana has been damaged in an amount far in excess of millions of dollars exclusive

of interest.

503.     Relator is a private citizen with direct and independent knowledge of the

allegations of this Complaint, who has brought this action pursuant to Ind. Code Ann. § 5-11-

5.5-1 *et seq.* on behalf of himself and the State of Indiana.

504.     This Court is requested to accept pendant jurisdiction of this related state claim

as it is predicated upon the exact same facts as the federal claims and merely asserts separate

damage to the State of Indiana in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following

damages to the following parties and against Defendant:

**To the State of Indiana**:

(1 ) Three times the amount of actual damages which the State of Indiana has sustained
as a result of Defendant's conduct;

(2) A civil penalty of not less than $5,000 and not more than $10,000 for each false
claim which Defendant caused to be presented to the State of Indiana;

(3) Prejudgment interest; and

(4) All costs incurred in bringing this action.

**To Relator:**

(1 ) The maximum amount allowed pursuant to Ind. Code Ann. § 5-11-5.5-1 *et seq.*
and/or any other applicable provision of law;

(2) Reimbursement for reasonable expenses which Relator incurred in connection with
this action;

(3) That Relator be awarded the maximum amount allowed as a Relator's Share under
State law;

(4) An award of reasonable attorneys' fees and costs; and

(5) Such further relief as this Court deems equitable and just.

## COUNT 21
## MARYLAND FALSE CLAIMS AGAINST STATE HEALTH PLANS AND STATE HEALTH PROGRAMS ACT

505.    All paragraphs of this Complaint are realleged and expressly adopted and

incorporated as if fully set forth herein again.

506.    This is a *qui tam* action brought by Relator on behalf of the State of Maryland to

recover treble damages and civil penalties under the Maryland False Claims Against State

Health Plans And State Health Programs Act, Md. HEALTH-GENERAL Code Ann. § 2-601

*et seq.*

507.    Section 2-602 provides, in part, liability for anyone who:

(1) Knowingly present or cause to be presented a false or fraudulent claim for payment or approval;

(2) Knowingly make, use, or cause to be made or used a false record or statement material to a false or fraudulent claim;

(3) Conspire to commit a violation under this subtitle;
… or

(7) Knowingly make, use, or cause to be made or used, a false record or statement material to an obligation to pay or transmit money or other property to the State;

(8) Knowingly conceal, or knowingly and improperly avoid or decrease, an obligation to pay or transmit money or other property to the State; or

(9) Knowingly make any other false or fraudulent claim against a State health plan or a State health program.

508.    The Code also makes the paying or receipt of bribes or kickbacks unlawful,

stating that a person may not:

> (1) provide to another individual items or services for which payment wholly or
> partly is or may be made from federal or State funds under a State health plan;
> and
>
> (2) solicit, offer, make, or receive a kickback or bribe in connection with
> providing those items or services or making or receiving a benefit or payment
> under a State health plan

Md. CRIMINAL LAW Code Ann. § 8-511. In addition, the Code makes it unlawful if a

physician "pays or agrees to pay any sum to any person for bringing or referring a patient or

accepts or agrees to accept any sum from any person for bringing or referring a patient." Md.

HEALTH OCCUPATIONS Code Ann. § 14-404.

509.    Defendant violated Md. CRIMINAL LAW Code Ann. § 8-511 by engaging in

the illegal conduct, kickback scheme and other related conduct described in this Complaint.

503.    The false and misleading off-label marketing and promotion, misbranding and

the kickback schemes detailed in this Complaint occur nationwide. This conduct and these

practices occur in every state in the country by Merit personnel, including in Maryland.

510.    Defendant furthermore violated Md. HEALTH-GENERAL Code Ann. § 2-601

*et seq.* by: (1) knowingly causing hundreds of thousands of false claims to be made, used and

presented to the State; (2) causing false records or statements to get a false or fraudulent claim

paid or approved by the State; (3) conspiring to defraud the State by getting a false or

fraudulent claim allowed or paid; and (4) concealing the fraud. It is also liable by virtue of its

systematic violation of Federal and state laws, including the FDCA, FCPA, Federal Anti-

Kickback Act, and, Md. HEALTH OCCUPATIONS Code Ann. § 14-404, and the Maryland

Criminal Law anti-kickback statute, and by virtue of the fact that none of the claims submitted

in connection with its conduct were even eligible for reimbursement by the government-funded

healthcare programs.

143

511.     The State of Maryland, by and through the Maryland Medicaid Program and other State healthcare programs, paid the claims caused to be submitted by Defendant through healthcare providers and third party payers in connection therewith – a result intended by the Defendant.

512.     The State was unaware of this fraud, and could not have uncovered the Defendant's scheme absent this disclosure by the Relator.

513.     Compliance with applicable Medicare, Medicaid and various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Maryland in connection with Defendant's conduct. In order to be eligible to participate in and receive reimbursement as a provider, compliance with applicable Maryland statutes, regulations and pharmacy manuals was mandatory. Additionally, Maryland requires all Medicaid providers to agree to the following among other items:

> That all claims submitted under his, her or its provider number shall be for medically necessary services that were actually provided as described in the claim. The Provider acknowledges that the submission of false or fraudulent claims could result in criminal prosecution and civil and administrative sanctions.

(Maryland Medical Assistance Program - Provider Agreement). The claims submitted by Maryland providers in connection with Defendant's equipment, devices and products violated federal and state laws as well as the Maryland provider agreements and should not have been paid.

514.     Had the State of Maryland known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or

were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

515.    As a result of Defendant's violations of Md. HEALTH-GENERAL Code Ann. § 2-601 et seq., the State of Maryland has been damaged in an amount far in excess of millions of dollars, exclusive of interest.

516.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Md. HEALTH-GENERAL Code Ann. § 2-601 et seq. on behalf of himself and the State of Maryland.

517.    This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claims and merely asserts separate damage to the State of Maryland in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

**To the State of Maryland**:

(1 ) Three times the amount of actual damages which the State of Maryland has sustained as a result of Defendant's conduct;

(2) A civil penalty of not more than $10,000 for each false claim which Defendant caused to be presented to the State of Maryland;

(3) Prejudgment interest; and

(4) All costs incurred in bringing this action.

**To Relator:**

(1 ) The maximum amount allowed pursuant to Md. HEALTH-GENERAL Code Ann. § 2-601 et seq. and/or any other applicable provision of law;

(2) Reimbursement for reasonable expenses which Relator incurred in connection with this action;

(3) That Relator be awarded the maximum amount allowed as a Relator's Share under State law;

(4) An award of reasonable attorneys' fees and costs; and

(5) Such further relief as this Court deems equitable and just.

## COUNT 22
## CONNECTICUT VENDOR FRAUD ACT

518.    All paragraphs of this Complaint are realleged and expressly adopted and

incorporated as if fully set forth herein again.

519.    This is a *qui tam* action brought by Relator on behalf of the State of Connecticut

to recover treble damages and civil penalties under Conn. Gen. Stat. § 17b-301 *et seq.*

520.    Conn. Gen. Stat. § 17b-301b provides in part that no person shall:

(1) Knowingly present, or cause to be presented, a false or fraudulent claim for payment or approval under a medical assistance program administered by the Department of Social Services;

(2) Knowingly make, use or cause to be made or used, a false record or statement material to a false or fraudulent claim under a medical assistance program administered by the Department of Social Services;

(3) Conspire to commit a violation of this section;
...or

(7) Knowingly make, use or cause to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the state under a medical assistance program administered by the Department of Social Services; or

(8) Knowingly conceal or knowingly and improperly avoid or decrease an obligation to pay or transmit money or property to the state under a medical assistance program administered by the Department of Social Services.

521.    In addition, Connecticut makes the payment or receipt of bribes or kickbacks

unlawful, stating:

(a) A person is guilty of paying a kickback when he knowingly offers or pays any benefit, in cash or kind, to any person with intent to influence such person:

146

(1) To refer an individual, or to arrange for the referral of an individual, for the furnishing of any goods, facilities or services for which a claim for benefits or reimbursement has been filed with a local, state or federal agency; or (2) to purchase, lease, order or arrange for or recommend the purchasing, leasing or ordering of any goods, facilities or services for which a claim of benefits or reimbursement has been filed with a local, state or federal agency.

Conn. Gen. Stat. § 53a-161d. *See also* Conn. Gen. Stat. § 53a-161c regarding the receipt of a kickback, "a person is guilty of receiving kickbacks when he: ...knowingly solicits, accepts or agrees to accept any benefit, in cash or in kind, from another person upon an agreement or understanding that such benefit will influence such person's conduct in relation to referring an individual or arranging for the referral of an individual for the furnishing of any goods, facilities or services to such other person under contract to provide goods, facilities or services to a local, state or federal agency."

522.    Defendant violated Conn. Gen. Stat. § 53a-161d by engaging in the illegal conduct, kickback scheme and other related conduct described in this Complaint.

523.    The false and misleading off-label marketing and promotion, misbranding and the kickback schemes detailed in this Complaint occur nationwide. This conduct and these practices occur in every state in the country by Merit personnel, including in Connecticut.

524.    Defendant furthermore violated Connecticut law, including Conn. Gen. Stat. § 17b-301b by: (1) knowingly causing hundreds of thousands of false claims to be made, used and presented to the State; (2) causing false records or statements to get a false or fraudulent claim paid or approved by the State; (3) conspiring to defraud the State by getting a false or fraudulent claim allowed or paid; and (4) concealing the fraud. It is also liable by virtue of its systematic violation of Federal and state laws, including the FDCA, FCPA, Federal Anti-Kickback Act, and the Conn. Gen. Stat. § 53a-161d, and by virtue of the fact that none of the

147

claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

525.   The State of Connecticut, by and through the Connecticut Medicaid program and other state healthcare programs, paid the claims caused to be submitted by Defendant through healthcare providers and third party payers in connection therewith – a result intended by the Defendant.

526.   The State was unaware of this fraud, and could not have uncovered the Defendant's scheme absent this disclosure by the Relator.

527.   Compliance with applicable Medicare, Medicaid and various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Connecticut in connection with Defendant's conduct. In order to be eligible to participate in and receive reimbursement as a provider, compliance with applicable Connecticut statutes, regulations and pharmacy manuals was mandatory. Additionally, Connecticut requires organizations and entities that receive more than $5,000,000 annually in Medicaid payments to agree to and complete a False Claims Act Compliance Attestation. The claims submitted by Connecticut providers in connection with Defendant's equipment, devices and products violated federal and state laws as well as the Connecticut provider agreements and should not have been paid.

528.   Had the State of Connecticut known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the

claims submitted by healthcare providers and third party payers in connection with that conduct.

529.    As a result of Defendant's violations of Connecticut law, the State has been damaged in an amount far in excess of millions of dollars, exclusive of interest.

530.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Conn. Gen. Stat. § 17b-301 *et seq.* on behalf of himself and the State of Connecticut.

531.    This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claims, and merely asserts separate damage to the State of Connecticut in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

**To the State of Connecticut:**

(1 ) Three times the amount of actual damages which the State of Connecticut has sustained as a result of Defendant's conduct;

(2) A civil penalty of not less than $5,000 and not more than $11,000 for each false claim which Defendant caused to be presented to the State of Connecticut;

(3) Prejudgment interest; and

(4) All costs incurred in bringing this action.

**To Relator:**

(1 ) The maximum amount allowed pursuant to Conn. Gen. Stat. § 17b-301 *et seq.* and/or any other applicable provision of law;

(2) Reimbursement for reasonable expenses which Relator incurred in connection with this action;

149

(3) That Relator be awarded the maximum amount allowed as a Relator's Share under State law;

(4) An award of reasonable attorneys' fees and costs; and

(5) Such further relief as this Court deems equitable and just.

## COUNT 23
## GEORGIA TAXPAYER PROTECTION AGAINST FALSE CLAIMS ACT

532.    All paragraphs of this Complaint are realleged and expressly adopted and

incorporated as if fully set forth herein again.

533.    This is a *qui tam* action brought by Relator on behalf of the State of Georgia to

recover treble damages and civil penalties under the Georgia Taxpayer Protection Against

False Claims Act, Ga. Code Ann. § 23-3-120 *et seq*.

534.    Ga. Code Ann. § 23-3-121 provides, in part, liability for anyone who:

(1) Knowingly presents or causes to be presented a false or fraudulent claim for payment or approval;

(2) Knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim;

(3) Conspires to commit a violation of paragraph (1), (2), (4), (5), (6), or (7) of this subsection;
    … or
(7) Knowingly makes, uses, or causes to be made or used a false record or statement material to an obligation to pay or transmit money or property to the state or local government, or knowingly conceals, knowingly and improperly avoids, or decreases an obligation to pay or transmit money or property to the state or a local government.

535.    The off-label marketing and promotion detailed in this Complaint occur

nationwide. This conduct and these practices occur in every State in the country by Merit

personnel, including in Georgia.

150

536.     Defendant furthermore violated Ga. Code Ann. § 23-3-120 *et seq.* by: (1) knowingly causing hundreds of thousands of false claims to be made, used and presented to the State; (2) causing false records or statements to get a false or fraudulent claim paid or approved by the State; (3) conspiring to defraud the State by getting a false or fraudulent claim allowed or paid; and (4) knowingly concealing, knowingly and improperly avoiding, or decreasing an obligation to pay. It is also liable by virtue of its deliberate and systematic violation of Federal and state laws, including the FDCA, FCPA, Federal Anti-Kickback Act, and Ga. Code Ann. § 23-3-120 *et seq.*, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

537.     The State of Georgia, by and through the Georgia Medicaid program and other state healthcare programs, paid the claims caused to be submitted by Defendant through healthcare providers and third party payers in connection therewith – a result intended by the Defendant.

538.     The State was unaware of this fraud, and could not have uncovered the Defendant's scheme absent this disclosure by the Relator.

539.     Compliance with applicable Medicare, Medicaid and various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Georgia in connection with Defendant's conduct. In order to be eligible to participate in and receive reimbursement as a provider, compliance with applicable Georgia statutes, regulations and pharmacy manuals was mandatory. The claims submitted by Georgia providers in connection with Defendant's

equipment, devices and products violated federal and state laws as well as the Georgia provider agreements and should not have been paid

540.    Had the State of Georgia known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

541.    As a result of Defendant's violations of Ga. Code Ann. § 23-3-120 *et seq.*, the State of Georgia has been damaged in an amount far in excess of millions of dollars exclusive of interest.

542.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Ga. Code Ann. § 23-3-120 *et seq.* on behalf of himself and the State of Georgia.

543.    This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claims, and merely asserts separate damage to the State of Georgia in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

**To the State of Georgia:**

(1 ) Three times the amount of actual damages which the State of Georgia has sustained as a result of Defendant's conduct;

(2) A civil penalty of not less than $5,500 or more than $11,000 for each false claim which Defendant caused to be presented to the State of Georgia;

(3) Prejudgment interest; and

152

(4) All costs incurred in bringing this action.

**To Relator:**

(1 ) The maximum amount allowed pursuant to Ga. Code Ann. § 23-3-120 *et seq.* and/or any other applicable provision of law;

(2) Reimbursement for reasonable expenses which Relator incurred in connection with this action;

(3) That Relator be awarded the maximum amount allowed as a Relator's Share under State law;

(4) An award of reasonable attorneys' fees and costs; and

(5) Such further relief as this Court deems equitable and just.

**COUNT 24**
**IOWA FALSE CLAIMS ACT**

544.    All paragraphs of this Complaint are realleged and expressly adopted and incorporated as if fully set forth herein again.

545.    This is a *qui tam* action brought by Relator on behalf of the State of Iowa to recover treble damages and civil penalties under Iowa Code § 685.1 *et seq.*

546.    Iowa Code § 685.2 provides in part for liability for anyone who:

a. Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval.

b. Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.

c. Conspires to commit a violation of paragraph "a", "b", "d", "e", "f", or "g".
... or

g. Knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the state, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the state.